UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| POURIA ESMAEIL POUR, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MARCO A. RUBIO, *et al.*, <br><br> Defendants. | Civil Action No. 25-573 (JEB) |

## MEMORANDUM OPINION

*Pro se* Plaintiff Pouria Esmaeil Pour is an Iranian F-visa applicant who seeks to attend a PhD program in the United States; his wife, *pro se* Plaintiff Sogand Mahboubi, wishes to accompany him. They are unable to enter this country until their visa applications are approved by the U.S. Embassy in Doha, Qatar. Plaintiffs contend that the unreasonable delay in obtaining a final decision on their applications has caused them considerable financial, emotional, and medical hardships. Invoking the Mandamus Act and the Administrative Procedure Act, they brought this suit asking the Court to compel the State Department to readjudicate their visa applications. Defendants State Department, Secretary Marco Rubio, and other Department employees have now moved to dismiss, asserting both that Plaintiffs do not identify a clear and nondiscretionary duty requiring the agency to act and that, alternatively, the consular nonreviewability doctrine bars judicial review. As the first point is persuasive, the Court will grant the Motion.

1

I.      **Background**

    A.  Legal Background

Foreign students who wish to pursue a "full course of study" in a U.S. academic institution may apply for an "F-1" nonimmigrant visa. See 8 U.S.C. § 1101(a)(15)(F). Spouses and minor children can accompany them by applying for a derivative "F-2" visa. Id. § 1101(a)(15)(F)(ii). Typically, all such applicants must appear for an in-person interview with a consular officer to evaluate their eligibility. Id. § 1202(h). Absent a visa sanction against the applicant's country, the officer must either "issue" or "refuse" the visa. See 22 C.F.R. § 41.121(a). The visa shall be refused "if (1) it appears to the consular officer from statements in the application, or in the papers submitted therewith, that [the non-citizen] is ineligible to receive a visa . . . , (2) the application fails to comply with the [Immigration and Nationality Act], or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa." 8 U.S.C. § 1201(g).

In cases where the officer requires additional information to determine the applicant's eligibility, however, he may refuse the visa pending further "administrative processing." Administrative Processing Information, U.S. Dep't of State, https://perma.cc/NK8K-9U8H. The status of each application is published on the State Department's website. See Visa Status Check, U.S. Dep't of State, https://perma.cc/SBV4-AT2N.

In the wake of the September 11 terrorist attacks, Congress enacted the Enhanced Border Security and Visa Entry Reform Act of 2002. The Act, among other things, imposed new restrictions on the issuance of visas and more stringent procedures for monitoring the entry and exit of foreign students and exchange visitors. See, e.g., 8 U.S.C. §§ 1731–32, 1735, 1761–62. It provides, as relevant here, that non-immigrant visas may not be issued to a non-citizen from a

country that has been designated a state sponsor of terrorism "unless the Secretary of State determines . . . that [the non-citizen] does not pose a threat to the safety or national security of the United States." Id. § 1735. Iran has been so designated since 1984. See State Sponsors of Terrorism, U.S. Dep't of State, https://perma.cc/CBT2-2C87.

### B. Factual Background

With this statutory and regulatory backdrop in mind, the Court proceeds to the facts as drawn from the Complaint, as required at this stage. Pour is an Iranian F-1 visa applicant who seeks to attend a fully funded PhD program in Civil Engineering at the University of Texas, Austin. See ECF No. 1 (Compl.), ¶ 6. Pour's wife, Mahboubi, is an Iranian F-2 visa applicant who wishes to accompany her husband. Id., ¶ 7. They applied for these nonimmigrant student visas and interviewed jointly at the U.S. Embassy in Doha on May 19, 2024. Id., ¶ 13. At the end of the interview, the consular officer informed Plaintiffs verbally that their "case require[d] further administrative processing" and told them to contact the Embassy if they did not receive an update by July 2024. See ECF No. 21-1 (Joint Decl.), ¶¶ 2–3; Compl. ¶ 13. To Plaintiffs' confusion, the consular officer simultaneously handed them a letter that indicated that their application was "conditionally approved." See Compl., ¶ 13; Joint Decl., ¶ 4; ECF No. 1-6 (Conditional Letter). Reflecting the consular officer's verbal communications, however, Pour's application on the Visa Status Check website on May 19, 2024, indicated that his application had been "adjudicated and refused" and would stay refused while it was "undergoing [administrative] processing." ECF No. 1-2 (Visa Status); Compl., ¶ 25.

Plaintiffs did not receive any further instructions by the July 2024 deadline indicated by the consular officer. See ECF No. 1-3 (Email Commc'ns) at ECF p. 10. Fearing that Pour would lose his offer of admission, waiver of tuition, and other benefits if he was unable to enter the

3

United States in time for the Fall 2024 semester, see Compl., ¶¶ 15–16, Plaintiffs emailed the Embassy nine more times over the next eight months requesting an update on the status of their applications. Id., ¶ 21; see Email Commc'ns at ECF pp. 1–9. These entreaties were to no avail. In its replies, the Embassy repeatedly stated that Plaintiffs' visas remained in administrative processing with no further action required from Plaintiffs. Id.; see also Email Commc'ns at ECF pp. 1–4, 7, 10–11. Having deferred enrollment twice already and facing the possibility of having to defer once more, see Compl., ¶¶ 15–16, Pour began suffering "serious mental and cardiovascular symptoms" because of the uncertainty surrounding his situation. See Joint Decl., ¶ 8. On February 25, 2025, Plaintiffs sued Secretary of State Marco Rubio, along with the Department itself and several of its unnamed employees, see Compl., ¶¶ 8–10, claiming that the agency's delays — over nine months at the time of filing — are unreasonable. They ask the Court to compel "Defendants to adjudicate Plaintiffs' visa applications within thirty (30) days" pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 706(1). See Compl. at 11–13. The Government now moves to dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim for relief. See ECF No. 19 (MTD) at 1.

II.     **Legal Standard**

Defendants' Motion invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant brings a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "[t]he plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 2020 WL 674778, at *2 (D.D.C. Feb. 11, 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 174 (D.D.C. 2020)). The court "assume[s] the truth of all material factual allegations in the complaint and

'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

When plaintiffs represent themselves, the standard articulated above is relaxed. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (cleaned up). In this Circuit, such leniency extends beyond the complaint, as "a district court must consider together all allegations that *pro se* plaintiffs make in their pleadings — including in their oppositions — when resolving a motion to dismiss." Elghannam v. Nat'l Ass'n of Bds. of Pharmacy, 151 F. Supp. 3d 57, 60 n.1 (D.D.C. 2015) (citing Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 151 (D.C. Cir. 2015)).

**III.    Analysis**

Contending that their visa applications have been unreasonably delayed, Plaintiffs ask this Court to compel the State Department to expeditiously process them. They seek a writ of

mandamus under 28 U.S.C. § 1361 or an order compelling agency action under the APA, 5 U.S.C. § 706(1).  See Compl. at 11–13.

    A.  Legal Framework

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances."  Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 189 (D.C. Cir. 2016) (citation omitted).  To proceed to the merits, parties "must first establish that the agency has violated a crystal-clear legal duty" and that they have "no other adequate means to attain the relief [they] desire[]."  In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022) (quotation marks and citation omitted) ("Absent a violation of a clear duty, this court is powerless to grant mandamus.").  "These . . . threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction."  Am. Hosp. Ass'n, 812 F.3d at 189.  Even after the jurisdictional hurdle is met, however, mandamus relief is warranted only when the court "finds compelling equitable grounds."  In re Ctr., 53 F.4th at 670 (quotation marks omitted).  For the court to grant mandamus on an unreasonable-delay claim, the hexagonal TRAC factors guide the court's equity analysis.  See Telecomms. Rsch. & Action Ctr. (TRAC) v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) (outlining six factors that courts must consider when determining unreasonableness of agency delay).

Plaintiffs must meet a similarly high standard under the APA before the court can "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  Such judicial restraint is rooted in concerns about judicial review of non-final agency action.  TRAC, 750 F.2d at 79 ("Postponing review until relevant agency proceedings have been concluded permits an administrative agency to develop a factual record, to apply its expertise to that record, and to avoid piecemeal appeals.") (internal quotation marks and citation omitted).

The court can likewise proceed to analyze the TRAC factors only when "a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). Because "the standards for obtaining relief" under both the Mandamus Act and the APA are "essentially the same," courts evaluate these two claims together. See Viet. Veterans of Am. v. Shinseki, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010); see also Karimova v. Abate, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024) ("Those two paths to compulsory relief share a common threshold . . . .").

Defendants argue that this case should be dismissed because Plaintiffs have not identified a clear and nondiscretionary duty that requires a consular officer to take further action on their applications. See MTD at 4. They claim that the officer has no further responsibility to readjudicate an application that was refused and placed into administrative processing under § 221(g) of the Immigration and Nationality Act, 8 U.S.C. § 1201(g). See MTD at 5. Plaintiffs disagree, asserting that a § 221(g) refusal is "merely a temporary procedural status" that does not absolve the agency from having to render a final decision on their visa applications. See Opp. at 6. They maintain that this continuing duty, which "require[s] timely adjudication of visa applications," can be found in the APA, the INA and its implementing regulations, and the Foreign Affairs Manual (FAM). Id.

The Court examines each provision in turn to determine whether it imposes a clear and nondiscretionary duty on agencies to readjudicate a visa application after it is placed in administrative processing.

B. Clear and Nondiscretionary Duty

1. *Administrative Procedure Act*

Plaintiffs first contend that portions of the Administrative Procedure Act, 5 U.S.C. § 555(b) and § 706(1), provide the statutory authority needed to compel agency action. See Compl., ¶¶ 44–46. Section 555(b) mandates that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." Section 706(1) enables courts to compel agencies to take action that is "unlawfully withheld or unreasonably delayed." Plaintiffs assert that the agency's failure to take final action on their applications violates its duty to act under these two provisions of the APA.

The D.C. Circuit addressed this issue just last year in Karimova. The plaintiff there requested mandamus and APA relief to compel consular officers to make a "final decision" on her immigrant-visa application after it had been placed into administrative processing. Karimova, 2024 WL 3517852, at *2–3. The Government moved to dismiss her claims on consular-nonreviewability grounds and, alternatively, because there had been no unreasonable delay. Id. at *3. The district court granted the motion, holding that, while judicial review was available, her visa application had not been unreasonably delayed. Quiros v. Amador, 715 F. Supp. 3d 31, 43 (D.D.C. 2023), aff'd sub nom. Karimova, 2024 WL 3517852, at *3. After *de novo* review, the Circuit affirmed the dismissal on a different ground, holding that § 555(b) does not provide a "clear, non-discretionary duty" because it is a "statement of general, good-governance principles," and its "non-specific directive . . . leaves officials ample room for judgment based on the circumstances." Karimova, 2024 WL 3517852, at *3–4. Most importantly, it was explicit that this section of the APA does not place a "crystal-clear legal duty" on consular officers to terminate "any potentially beneficial follow-on administrative

8

processing" after having already "adjudicated a visa application." Id. at *3 (citation omitted). In doing so, it emphasized that the case was "not standard administrative fare" because of the judiciary's historically limited role in immigration policy, making general provisions such as § 555(b) especially unsuitable as a source of a mandatory duty. Id. at *5; see also United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950) ("It is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.").

Although the Court of Appeals did not discuss § 706(1), that section also cannot act as a source of independent duties for consular officers because it is just as "general[] and indistinct[]" as § 555(b). Karimova, 2024 WL 3517852, at *4. Given Karimova's holding, Plaintiffs cannot rely on either of these APA sections to establish a clear and nondiscretionary duty for agency officials to act after administrative processing.

Plaintiffs respond that Karimova is not dispositive because it is an unpublished decision regulated by D.C. Circuit Rule 36(e)(2). See Opp. at 14. Under that Rule, "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." The Government counters, however, by citing to another D.C. Circuit rule, which it claims makes unpublished circuit decisions still binding on district courts. See MTD at 5 n.2 (citing D.C. Cir. R. 32.1(b)(1)(B) ("All unpublished orders or judgments of this court, including explanatory memoranda[,] . . . may be cited as precedent.")). Courts in this district have taken opposite approaches to these potentially conflicting rules in determining the binding nature of Karimova. See Datta v. Rubio, 2025 WL 752643, at *6 n.3 (D.D.C. Mar. 10, 2025) (collecting cases). Other courts, declining to wade into this debate, have concluded that Karimova's reasoning is persuasive in granting Government motions to dismiss. See, e.g., Naseri v. Rubio,

2025 WL 1865035, at *6 (D.D.C. July 7, 2025); Doroodchi v. Rubio, 2025 WL 1865114, at *4 (D.D.C. July 7, 2025).

This Court adopts this last position. Regardless of whether Karimova is actually binding, it is still a case decided by the Circuit that contains reasoning that the Court finds persuasive as to the APA. That Act, accordingly, is not the source of a nondiscretionary duty.

　　2. *INA and Federal Regulations*

Reaching for other arrows in their quiver, Plaintiffs clarify in their Opposition that they rely on statutory and regulatory provisions beyond the APA, including the INA and its implementing regulations. See Opp. at 6. They maintain that such provisions create a "statutory scheme" under which "consular officers are required to complete adjudication of each visa application following an interview" — a "clear, non-discretionary obligation." Id. at 4. It is true that Karimova seems to squarely reject only § 555(b) as a source of clear and nondiscretionary duties, leaving open the possibility that such duties might come from another source. See 2024 WL 3517852, at *3 ("Karimova argues that Section 555(b) — and only Section 555(b) — places a clear, non-discretionary duty on her consular officer.") (cleaned up).

Following that reasoning, Plaintiffs cite district-court decisions that have distinguished Karimova by concluding that a clear and nondiscretionary duty derives from the INA and its regulations if not the APA. See Opp. at 14 (citing Haeri Mehneh v. Blinken, 2024 WL 5116521, at *6 (D.D.C. Dec. 16, 2024) (finding duty under INA and federal regulations); Aramnahad v. Rubio, 2025 WL 973483, at *8 (D.D.C. Mar. 31, 2025) (same)).

This Court cannot join their company. Its reading of the relevant statute and regulations for nonimmigrant visas yields the conclusion that they do not provide a clear and

10

nondiscretionary duty for consular officers to act after administrative processing. In explaining why, the Court begins with the text and then distinguishes the aforementioned cases.

    a. Text

The relevant provision from the INA requires that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). The implementing regulations similarly require that after "a visa application has been properly completed and executed in accordance with the provisions of the INA," then "the consular officer must issue the visa [or] refuse the visa." 22 C.F.R. § 41.121(a). While such provisions do indeed create a nondiscretionary duty for consular officers to act, they stop short of giving Plaintiffs the "right to compel further consular action after a consular officer has considered and refused the Visa Applications at issue here." MTD at 1–2; see also Doroodchi, 2025 WL 1865114, at *4 ("Section 1202(d) likewise does not create a duty to further adjudicate a visa placed into administrative processing."). Under the plain text of the statute, the verb "shall" in the INA creates a mandatory duty for consular officers to "review[] and adjudicate[]" nonimmigrant visa applications. See 8 U.S.C. § 1202(d); see also Naseri, 2025 WL 1865035, at *10 ("This Court agrees with the general proposition that 'shall' usually indicates a mandatory duty.") (citing Ballou v. Kemp, 92 F.2d 556, 558–59 (D.C. Cir. 1937)). But that initial adjudication is all that they are required to do. See Yaghoubnezhad v. Stufft, 734 F. Supp. 3d 87, 99–101 (D.D.C. 2024).

An adjudication, as established by the implementing regulations, occurs "when a visa application has been properly completed and executed in accordance with the provisions of the INA" and "the consular officer [has] issue[d] the visa [or] refuse[d] the visa." 22 C.F.R. § 41.121(a). In this case, the relevant "provision[] of the INA" is 8 U.S.C. § 1201(g), which is

11

the section that enables consular officers to refuse a visa and place it into further administrative processing. See 22 C.F.R. § 41.121(a) (stating that "[n]onimmigrant visa refusals must be based on legal grounds, such as . . . INA 221(g) . . . or other applicable law"); see also Administrative Processing Information, *supra*. Indeed, the agency's internal guidelines indicate that the consular officer's initial decision is an adjudication. See 9 FAM § 302.1-8(B)(c) ("A refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome."). The Government therefore discharged its nondiscretionary duty when it refused Plaintiffs' applications under INA § 221(g). See Karimova, 2024 WL 3517852, at *3 ("[Plaintiff] received the 'refused' decision that the law expressly authorizes . . . .") (quoting 22 C.F.R. § 42.81); see, e.g., Ibrahim, 2024 WL 4103702, at *3 ("[O]ne cannot read Karimova as saying anything other than a 221(g) refusal and placement in administrative processing was a conclusion.").

The federal regulations impose no additional obligations to act after the application is placed in administrative processing. "Nothing in federal law speaks to the ability of a consul, after making that decision, to hold onto the application in case circumstances later change in the applicant's favor . . . ." Karimova, 2024 WL 3517852, at *4. Plaintiffs emphasize throughout their Opposition that their applications were conditionally approved initially, see Opp. at 10, 13, but that does not change the fact that their applications were ultimately adjudicated and refused under § 221(g). The Court, accordingly, finds that the INA and federal regulations for nonimmigrant visas do not create an independent duty for agencies to readjudicate a visa after placing it into administrative processing.

b.  Cases

Hoping to garner more traction, Plaintiffs cite to multiple cases, including some from this district, see Opp. at 14, that have found a nondiscretionary duty to follow up after administrative processing. See, e.g., Haeri Mehneh, 2024 WL 5116521, at *6; Aramnahad, 2025 WL 973483, at *8–10; Motevali v. Rubio, 2025 WL 885116, at *6 (D.D.C. Mar. 21, 2025). These cases can be distinguished, however, because they concern immigrant visas, which are governed by a different set of regulations from nonimmigrant visas. Compare 22 C.F.R. § 42.81 (procedures for refusing immigrant visas), with id., § 41.121 (procedures for refusing nonimmigrant visas). In most cases, plaintiffs pointed to 22 C.F.R. § 42.81(e) as providing a duty to reconsider their claims after a § 221(g) refusal. See, e.g., Aramnahad, 2025 WL 973483, at *8; Haeri Mehneh, 2024 WL 5116521, at *6 ("Section 42.81(e) of the INA creates a nondiscretionary duty requiring consular officers to reconsider within a reasonable time visa applications refused under Section 221(g) and placed under administrative processing."). They may be correct that a nondiscretionary duty exists for immigrant visas, as those regulations state that "the case shall be reconsidered" if "the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility." 22 C.F.R. § 42.81(e). But such regulations do not apply to Plaintiffs, who applied for nonimmigrant F-visas. Those regulations are found in § 41.121 instead, which has no such equivalent provision mandating readjudication. While large parts of these two regulations are similar, this omission is a fatal difference.

Plaintiffs' claims can also be differentiated on factual grounds. One of the only cases that pertains to nonimmigrant visas emphasized the fact that the consular officer requested more information from the plaintiff. See, e.g., Karbasian v. U.S. Dep't of State, 2025 WL 821597, at *7 (S.D. Ill. Mar. 14, 2025) (distinguishing Karimova by referring to FAM provision that

13

recommends re-adjudication "[w]hen the applicant has presented additional evidence") (alteration in original) (quoting 9 FAM § 306.2-2(A)(a)(1)). While the Court disagrees that this FAM provision can provide a source of duties, as explained below, Plaintiffs never even claim that they were requested to provide new information, nor do their email communications show that it happened. See Email Commc'ns; cf. Aramnahad, 2025 WL 973483, at *8 (plaintiffs could point to fact that "the consular officer . . . requested Plaintiffs provide additional documentation after placing their application in administrative processing, which Plaintiffs provided"). This factual distinction thus also dooms Plaintiffs' claim.

      3. *Foreign Affairs Manual*

Plaintiffs attempt to fire one last volley by pointing to the FAM, an internal policy manual used by consular officers around the world, to create a nondiscretionary duty. See Opp. at 6 ("Plaintiffs properly rely on provisions such as 9 FAM [§] 504.11-3(A) and 9 FAM [§] 403.12 to demonstrate that the Department's legal and procedural obligations remain unfulfilled."). As a threshold matter, the Court is skeptical that any provision in the FAM provides a source of nondiscretionary duties; in fact, Plaintiffs themselves concede that the FAM is "technically non-binding." Opp. at 6. The Court agrees, since the FAM is a set of internal agency guidelines and policies that does not purport to bind officers' actions. See Stone v. U.S. Dep't of State, 2022 WL 4534732, at *10 (D.D.C. Sept. 28, 2022) ("That the Foreign Affairs Manual offers guidance . . . does not mean that such [actions] are ministerial, non-discretionary acts."); Viet. Veterans of Am. v. Sec'y of the Navy, 843 F.2d 528, 537 (D.C. Cir. 1988). Given the baseline presumption that "consular officers have broad discretion . . . 'to admit noncitizens immune from judicial inquiry or interference,'" Karimova, 2024 WL 3517852, at *4 (quoting Dep't of State v. Muñoz, 602 U.S. 899, 907 (2024)), it is highly unlikely that Plaintiffs would

14

find a "crystal-clear legal duty," id. at *3 (quotation marks omitted), from internal guidelines that are not meant to be legally binding.

Even if the Court were to assume that some provision in the FAM could be binding, Plaintiffs have not identified any. Neither of the two guidelines that they point to operates as a source of nondiscretionary duties. They cite language in 9 FAM § 504.11-3(A)(6)(a), which states that "[u]nder no circumstances should a decision of the question of eligibility be made before the Department's [advisory opinion] is received." While this guideline applies only to immigrant visas and is thus technically inapplicable, there is an almost identical guideline about advisory opinions for nonimmigrant visas in § 403.10-3(B)(a)(3). Regardless, the FAM is abundantly clear that seeking such an opinion prior to a § 221(g) refusal is purely discretionary. See id., § 302.1-8(C) ("An [advisory opinion] is not required for a potential INA 221(g) refusal; however, if you have a question . . . you may request an [advisory opinion] . . . .").

Plaintiffs next maintain that 9 FAM §§ 403.10 and 403.12 require "consular posts to conduct ongoing internal review of refusals," which means that "officers must either issue or refuse a visa only after a full review." Opp. at 5 (emphasis omitted); accord id. at 13. This is once again an inaccurate representation of the guidelines. For starters, the applicant must first "present[] additional evidence" for the consular officer to "re-open and re-adjudicate the case," which never occurred in this case. See 9 FAM § 403.10-4(B)(a). More importantly, there are no mandatory provisions attached to post-adjudication review of nonimmigrant visas. In the section for nonimmigrant visas, the FAM includes only discretionary language, stating that "[r]eviewing officers must review as many [nonimmigrant visa] refusals as is practical, but not fewer than 10 percent of refusals." 9 FAM § 403.12-3(A)(a) (emphasis added); see also 22 C.F.R. § 41.121(c) ("Nonimmigrant refusals must be reviewed, in accordance with guidance by the Secretary of

15

State, by consular supervisors, or a designated alternate . . . ."). Such language suggests that "only a small fraction of all visa refusals receives supervisory review" and that "[t]his review is not automatic," a reasonable assumption to make in light of the volume of applications received by consular officers. Yaghoubnezhad, 734 F. Supp. 3d at 100; cf. Blessing v. Freestone, 520 U.S. 329, 343 (1997) (refusing to compel government action under different discretionary standard because "any individual plaintiff might still be among the 10 . . . percent of persons whose needs ultimately go unmet"), abrogated on other grounds as recognized in Medina v. Planned Parenthood S. Atl., 145 S. Ct. 2219, 2233–34 (2025). Even if Plaintiffs could somehow establish that the FAM is a source of nondiscretionary duties, which they concede they cannot, see Opp. at 6, they have failed to point to any guidelines that require consular officers to act after administrative processing.

\* \* \*

The Court acknowledges that the upshot of Karimova may be to "give[] agencies carte blanche to administratively process noncitizens' visa applications *ad infinitum* with no avenue for judicial review." Datta, 2025 WL 752643, at \*8 (following Karimova as persuasive authority regardless). That may warrant concern, and Plaintiffs' anguish over their inability to study at a respected program in the United States indeed deserves sympathy. This Court nonetheless lacks jurisdiction to compel the agency to adjudicate their visas. Regardless of Plaintiffs' dissatisfaction with the nation's immigration laws, such a "statutory gap" is "best filled by Congress, not this Court," id. at \*9, as "those types of claims generally fall outside the Judicial Branch's wheelhouse." Karimova, 2024 WL 3517852, at \*5. Plaintiffs' suit must accordingly be dismissed for lack of subject-matter jurisdiction and failure to state a claim for relief.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: August 14, 2025